FILED
United States Court of Appeals
Tenth Circuit

June 17, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENNY SMITH,

      Plaintiff-Appellant,

v.

GLOBAL STAFFING,

      Defendant-Appellee.

No. 13-1449
(D.C. No. 1:11-CV-00983-MSK-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **O'BRIEN**, and **PHILLIPS**, Circuit Judges.

In a *pro se* complaint, Kenny Smith, an African American male with a

disability, claimed Global Staffing (Global) discriminated against him based on his

sex, his race, and his disability. The discriminatory acts, he claims, were not hiring

him for a particular position and terminating his employment. Judgment as a matter

of law was entered against him on some claims and a jury rendered a verdict in favor

of Global on his remaining claims. He appeals from the resulting judgment and

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). We therefore deny
Appellant's motion for oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

complains of the judge's resolution of some trial issues.  There was no error.  We affirm.[1]

## I.    Background

### A.    Pretrial Proceedings

After Smith's case had been pending for two years—and on the eve of trial—he retained counsel.[2]  The district judge denied his motion for a continuance and scheduled the final pretrial conference.  In the final pretrial order, the judge listed the claims proceeding to trial as sex and race discrimination under Title VII, 42 U.S.C. § 2000e-2(a); race discrimination under 42 U.S.C. § 1981; and disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12112 (ADA).  The judge excluded a state-law claim of wrongful discharge in violation of public policy because it was not contained in Smith's complaint.

### B.    Parties' Stipulations

The parties stipulated to certain facts, including the following:  "Global Staffing is a staffing company that provides temporary staffing, temp-to-hire staffing, and direct-hire services. . . ."  Aplt. App. at G14-G15.  "[O]n or about June 27, 2005, Global Staffing hired Mr. Smith and placed him in a temp-to-perm assignment with Wabash Trailers," one of Global's clients.  *Id.* at G15.  On September 23, 2005, Smith reported he had suffered a crush injury to his left foot while working at

---

[1]    Our jurisdiction derives from 28 U.S.C. § 1291.

[2]    The same counsel continue to represent Smith in this appeal.

Wabash Trailers. He was released to light-duty work in December 2005, at which point Global offered him full-time light-duty work at its company office. Smith accepted that offer and, due to the limitations resulting from his injury, he remained in that assignment until June 11, 2008. His "job duties included scanning, filing, document shredding, and other clerical tasks as needed." *Id.* "[O]n June 17, 2008, Global . . . notified Mr. Smith that his assignment to a job in Global Staffing's office was terminated." *Id.* at G15-G16. Global further stipulated that Smith has a disability. The district judge also read the following additional stipulation to the jury:

> Ladies and gentlemen of the jury, the parties have reached a stipulation which they hope and I hope will help you understand what the parties understood with regard to the modified duty period.[3]
>
> []Smith and Global understood that the modified duty period would expire when he reached maximum medical improvement and his workers compensation case was resolved. When that period expired, his temporary employment in the Global office would be over and he would return to a temporary employee status. []Smith thought that he might be able to return to Wabash as a permanent employee.

*Id.* at H345.[4]

---

[3] During the trial, the parties referred to Smith's light-duty assignment at the Global office as "modified duty."

[4] The parties are familiar with the evidence presented at trial. We will refer to it only as appropriate to resolving the issues presented.

### C. Rule 50(a) and Rule 15(b) Motions

After Smith had presented his case to the jury, Global moved for judgment as a matter of law under Fed. R. Civ. P. 50(a). It renewed the motion at the close of the evidence. In its view the evidence revealed no legally sufficient basis for the jury to find in favor of Smith on his claims of wrongful termination based on his sex, race, or disability. The judge agreed and dismissed those claims. Consequently, only Smith's failure-to-hire claims went to the jury.

At the close of the evidence, Smith moved under Fed. R. Civ. P. 15(b) to amend his complaint to conform to the evidence. He argued Global had consented to trying his state claim of wrongful termination in violation of public policy and, accordingly, would not be prejudiced by adding that claim. Global denied consenting, explicitly or implicitly, to trying that claim. The judge denied the motion.

### D. Request to Modify the Jury Verdict Form

At conference the instructions and verdict form were settled. The judge read the instructions to the jury and both sides made initial closing arguments, but before making his rebuttal argument Smith asked for a modification of the verdict form to include "segregation" as an additional basis for his discrimination claims. Understandably, Global objected. The judge denied the request and sent the unmodified verdict form to the jury. The jury returned a verdict in favor of Global.

## II.    Discussion

Smith challenges the judgment as a matter of law on his termination claims, the denial of his motion to amend his complaint to add a claim asserting wrongful termination in violation of public policy, and the denial of his request to modify the verdict form.

### A.    Grant of Rule 50(a) Motion

Under Rule 50(a)(1), after "a party has been fully heard on an issue during a jury trial," a district judge may "resolve the issue against the party" and may grant the movant judgment as a matter of law on a claim after finding "that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1)(A)-(B).

> The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party. For a jury to properly find for a party, the party must present more than a scintilla of evidence supporting its claim.

*Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007). Our review of a grant of a Rule 50(a) motion is de novo and we view the evidence in the light most favorable to Smith. *See id.*

Focusing on the parties' stipulation regarding their mutual understanding of when and why Smith's modified-duty assignment would end, the judge concluded there was no evidence of a termination from that assignment; rather the job had ended when Smith reached maximum medical improvement (MMI) and his workers'

compensation claim was resolved.[5]  But Smith points us to testimony of

Deborah Westmoreland, Global's office manager.  She said he was the only

employee to be involuntarily terminated from a modified-duty assignment.[6]  Focusing

on that narrow aspect of her testimony he claims the termination issue should have

been decided by the jury.  Indeed, there is some evidence suggesting Smith may have

been terminated from that position, but the evidence on point, considered as a whole,

was insufficient for a reasonable jury to conclude his race, his sex, or his disability

was a motivating factor even if it was a termination.  For that reason, we affirm.

When a plaintiff asserts a claim of discrimination, his "prima facie case,

combined with sufficient evidence to find that the employer's asserted justification is

false, may permit the trier of fact to conclude that the employer unlawfully

---

[5]  The judge also found Smith not to have been terminated from his continued employment with Global as a member of the pool of workers seeking job assignments with the company's clients.  There was no evidence Global told him he would not get another position, and Smith conceded he never called Global to indicate he was available for a new work assignment.  Smith does not challenge this ruling on appeal.

[6]  According to Westmoreland's testimony all other modified-duty assignments at Global's office had ended when the employees reached MMI or when their workers' compensation claims were settled.  The other employees then either returned to their previous work assignments or were assigned to positions with other clients.  She indicated Smith reached MMI in August 2007, but his modified-duty assignment did not end until June of 2008.  As she explained, Smith could not be released from his modified-duty assignment until his attorney and Global's insurer reached a settlement on his workers' compensation claim.  When that occurred, Global informed Smith he was released.  Westmoreland said Smith was the only employee on modified duty who she had to involuntarily terminate, as all other modified-duty employees resigned once they reached MMI and entered into settlements with the insurer.

discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). But "an employer [is] entitled to judgment as a matter of law if the record conclusively reveal[s] some . . . nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.*

Here, Smith stipulated to his understanding: "the modified duty period would expire when he reached maximum medical improvement and his workers compensation case was resolved. When that period expired, his temporary employment in the Global office would be over and he would return to a temporary employee status." Aplt. App. at H345. By his stipulation Smith conceded a non-discriminatory motive for terminating his modified-duty assignment. *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169 (10th Cir. 2007) (holding plaintiff's concession of lawful motive precludes inference of discriminatory motive). Moreover, the uncontroverted evidence was consistent with his stipulation. Global terminated his modified-duty assignment only after he had reached MMI and settled his workers' compensation claim.

Smith views the stipulation as only reflecting his state of mind as he *started* that assignment and not "what actually happened later in this case." Aplt. Opening Br. at 19. At best that is a slender reed, insufficient to show Global's stated reason for terminating the assignment to be untrue. *See Reeves*, 530 U.S. at 148. The

stipulation, considered in the light of all other evidence, precluded any reasonable jury from concluding Global's reason for terminating him was implausible, inconsistent, incoherent, or contradictory. *See Swackhammer*, 493 F.3d at 1167. Not only that, but Smith presented no evidence of its falsity. *See id.* And, while there was evidence of his being treated differently from other Global employees during his modified-duty assignment,[7] as to his termination from that assignment (the real issue) the uncontroverted evidence demonstrated his treatment to be the same as all the other employees *who were similarly situated to him*, namely, those who were on modified duty. *See id.* at 1167-68 (noting pretext argument based on differential treatment must focus on similarly situated employees). All of Global's other modified-duty assignments ended when the employees reached MMI and settled their workers' compensation claims. Smith's situation differed only slightly; he did not

---

[7]    Smith testified to having felt unwanted and uncomfortable while working at the Global office. He based this feeling on his physical placement in a back room of the office, the non-meaningful work he was assigned, the training provided to female employees but not to him, his exclusion from office lunches, a direction by Global to use a different bathroom than the other employees, a memo changing certain aspects of his work that only he received, and other treatment by Global employees that he perceived as unkind.

The evidence showed that, while Smith was on modified duty at Global's office, the other Global employees were instructed to be cordial and polite to him, but not to bring him into the circle of the regular staff. Westmoreland testified that, "The idea for a modified duty employee is that they're kept working and kept busy until they're able to go back to their own job. If they're working in our office and they're feeling more and more like part of the office, they're going to want to stay at Global Staffing, rather than go back to their other job." Aplt. App. at G220.

resign at that point, as all other modified-duty workers had done, which would be consistent with Global's clear expectations and long standing practice. Instead he had to be informed that he must move on. The stipulation speaks directly to the parties' understanding of their arrangement and it leaves no room for the exception Smith tries to wedge into the matter.

Insufficient evidence exists in this record to demonstrate how Global's stated reason for terminating his modified-duty assignment was pretextual. *See Stewart v. Adolph Coors Co.*, 217 F.3d 1285, 1289 (10th Cir. 2000). Even viewed in the light most favorable to him, there is a dearth of evidence from which one could conclude that Global terminated his modified-duty assignment because of his race, his sex, or his disability.[8] *See id.* Accordingly, we affirm the judgment as a matter of law entered on Smith's termination claims.

## B.    Denial of Rule 15(b) Motion

Fed. R. Civ. P. 15(b)(2) provides:

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue. But failure to amend does not affect the result of the trial of that issue.

---

[8]    The only *suggestion* of differential treatment based on Smith's disability, race, or sex was speculative testimony by a former Global employee who admitted no one ever told her those factors played any part in Global's decisions regarding Smith's employment.

At the close of the evidence, Smith moved to amend his complaint to add a state-law claim for wrongful discharge in violation of public policy. According to him, Global consented to trying that claim by presenting evidence regarding his workers' compensation claim (including his retention of counsel, the settlement of that claim, and the subsequent termination of his modified-duty assignment). Alternatively, he claimed the amendment was proper under Rule 15(b)(1) because Global would not be prejudiced. Global responded it would be prejudiced by the addition of the claim, which the district judge had excluded before trial and which had not been fully litigated during the trial.

The judge denied Smith's motion. She said Smith had not satisfied all of the elements of a wrongful-termination claim because there was no evidence of a termination of his modified-duty position. She also decided the evidence regarding Smith's workers' compensation claim, including its effect on the length of his modified-duty assignment, was relevant to Global's defense of his discriminatory-termination claims. She concluded that Global had not, by presenting this evidence, consented to trying a public-policy wrongful-termination claim. She also found a belated amendment of the complaint--after all the evidence had been presented--would prejudice Global.

Our review is for an abuse of discretion. *Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1160 (10th Cir. 1999). We find none. "Implied consent [to try an issue under Rule 15(b)] cannot be based upon the

introduction of evidence that is relevant to an issue already in the case when there is no indication that the party presenting the evidence intended to raise a new issue." *Id.* at 1162. We agree with the district judge. The evidence related to Smith's workers' compensation claim was relevant to an issue already in the case: his claim that Global terminated his modified-duty assignment based on his race, sex, or disability. And nothing suggests Global intended to raise any new issue, much less a public-policy wrongful-termination claim, by presenting its evidence on issues being litigated. In like vein, the trial judge did not abuse her discretion in assessing the prejudice to Global resulting from permitting Smith to add an additional claim after the evidence was closed. *See id.* ("When evidence claimed to show trial of an issue by consent pursuant to Rule 15(b) is relevant to a separate issue already in the case, it would be unjust to the opposing party to consider a new theory of recovery after trial is complete." (internal quotation marks and alteration omitted)).

### C. Denial of Request to Modify Jury Verdict Form

The parties participated in a jury instruction conference, during which they raised objections to the instructions proposed by the judge and proffered alternatives. When the conference concluded, the district judge read the final instructions and the verdict form to the jury. The verdict form required the jury to decide whether Smith had proven by a preponderance of the evidence that his sex, his race, or his disability was a motivating factor in Global's decision not to hire him. *See* Aplt. App. at C9-C10. After Global presented its closing argument, but before his rebuttal

- 11 -

argument, Smith remarked that the verdict form addressed only his failure-to-hire claims, omitting any reference to segregation claims supported by the statutory language in Title VII and the ADA. *See* 42 U.S.C. §2000e-2(a)(2) (prohibiting employers from "segregat[ing] . . . employees or applicants . . . in any way which would deprive or tend to deprive any individual of employment opportunities . . . because of such individual's race, color, religion, sex, or national origin"); *see also* 42 U.S.C. § 12112(b)(1) (including similar language regarding segregation based on an individual's disability). He asked the judge to modify the verdict form to include these segregation claims.

Initially the judge was inclined to amend the verdict form, but she ultimately denied Smith's request because the instruction set included no instructions defining the elements of his segregation claims. Like the verdict form, the elemental instructions addressed only Smith's failure-to-hire claims. *See id.* at C3, C5, C7. The judge stated,

> There is no elemental instruction governing segregation. There is no way for the jury to know what the legal standards on that are. There was no request for that instruction. And to modify the question in the verdict form to include reference to that would not allow the jury to make a determination based upon appropriate elemental standards.

*Id.* at H518. The judge reminded Smith of his opportunity to raise the issue during the jury instruction conference and his failure to do so. Because the request to modify the verdict form so late in the proceedings was untimely, the judge denied it.

- 12 -

We review the language of a special verdict form for an abuse of discretion. *Webb v. ABF Freight Sys., Inc.*, 155 F.3d 1230, 1249 (10th Cir. 1998). "Under the abuse-of-discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Okla. ex rel. Edmondson v. Tyson Foods, Inc.*, 619 F.3d 1223, 1232 (10th Cir. 2010) (internal quotation marks omitted).

At the jury instruction conference, the district court agreed to Smith's request to include "the segregation language," Aplt. App. at H415 (internal quotation marks omitted), in the instructions describing the statutory bases for his discrimination claims, *see id.* at H412, H415, H416; *see also id.* at C2, C4, C6. But Smith neither requested inclusion of the segregation language in any of the elements instructions related to his claims, nor objected to its absence. When later asked whether there were additional tendered instructions the judge should consider, Smith again failed to appropriately respond. Nor did he ask the judge to add segregation claims to the verdict form or object to their omission. *See id.* at H434-H437.

When the judge continued the instruction conference the following day, Smith once again did not ask for an elements instructions on segregation or inclusion of those claims in the verdict form. After both parties indicated they had no further objections to the instructions, the judge then proceeded to read them and the verdict form to the jury. She then gave the parties *another* opportunity to raise any

- 13 -

objections, and Smith stated he had none.  *See id.* at H468-H469.  Since Smith delayed raising the issue until after Global completed its closing argument, he was the author of his fate.

There was no abuse of discretion in refusing Smith's request to modify the verdict form under the circumstances presented, particularly in light of the multiple opportunities Smith had to object to the instructions and verdict form, both before *and after* they were read to the jury; the request was untimely.  *See* Fed. R. Civ. P. 51(b)(2) & (c)(2) (providing objections to instructions are timely if made "before the instructions and arguments are delivered").  Assuming the late blooming request was not a calculated attempt to gain unfair advantage, it would necessarily have required supplemental jury instructions and re-argument; something that would be ungainly at best and possibly causing juror confusion.

The judgment of the district court is affirmed.  Smith's motion for oral argument is denied.

Entered for the Court


Terrence L. O'Brien
Circuit Judge